No. 12220

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

KENNETH A. GROPP and BETTY L. GROPP,
husband and wife,

Plaintiffs and Appellants,

-vs-

KENNETH R. LOTTON et al.,

Defendants and Respondents.

---

Appeal from:  District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellants:

Smith, Emmons and Baillie, Great Falls, Montana.
Marvin J. Smith argued, Great Falls, Montana.

For Respondents:

Graybill, Graybill, Ostrem and Warner, Great Falls,
Montana.
Harrison, Loendorf and Poston, Helena, Montana.
Jerome T. Loendorf argued, Helena, Montana.

---

Submitted:  September 25, 1972

Decided: NOV 14 1972

Filed: NOV 1 1972

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiffs Kenneth A. Gropp and Betty L. Gropp, husband and wife, brought this action in the district court of the twelfth judicial district, county of Hill, to quiet title to certain ranch property leased with an option to buy to defendants, Kenneth R. Lotton and Mary K. Lotton, husband and wife. Defendants counterclaimed for specific performance or the repayment of money paid by them to plaintiffs. The cause was tried before Hon. B. W. Thomas, sitting without a jury. Findings of fact, conclusions of law and judgment were entered for defendants. Exceptions were filed by plaintiffs and denied by the trial court. Plaintiffs now appeal from the judgment.

On September 25, 1965, plaintiffs, as vendors, agreed to sell and defendants, as vendees, agreed to purchase certain ranch properties located in Chouteau and Hill counties. The contract provided for an escrow of deed, merchantable title, a schedule of payments, default provisions and a provision to protect plaintiffs in the event of a crop failure. In addition, the contract provided that plaintiffs would lease to defendants for five years, under specified terms and conditions, certain acreage in Hill County with an option to purchase some of the leased lands.

On October 1, 1965, pursuant to the contract for deed, the parties entered into a farm lease which incorporated the terms of the contract. The lease ran from October 1, 1965 to October 1, 1970. Tract I of the leased lands was made subject to the option to purchase, the terms of which were:

> "The right to purchase shall be at a price of Eighty Thousand Dollars ($80,000.00) with a required down payment of 29% and the balance, with interest at the rate of four percent (4%) per annum, to be amortized over a fifteen (15) year period. The Lessees shall be entitled to the credit of the excess of the rent payments made hereunder, including Federal Crop payments, over the real property taxes incurred on said Tract I during the term of

this lease. This credit shall first be applied in payment for the existing summerfallow, hereby agreed to be 300 acres at a price of $10.00 per acre, and then the remaining credit shall be applied on the purchase price of $80,000.00 by reducing the necessary down payment such amount.

"IT IS FURTHER AGREED AND UNDERSTOOD that the two steel graneries of 2250 bushel capacity and the wooden granery approximately 16' x 20' in size will be included with the real property in Tract I in the event of the exercise of the option by the Lessees.

"IT IS FURTHER UNDERSTOOD AND AGREED that the Lessees may exercise the option to purchase Tract I by giving the Lessors notice of their intention to exercise the option in writing at least thirty (30) days prior to the expiration of the term of this lease. It is further agreed and understood that the aforesaid option does not apply to Tract II hereinbefore described."

At trial, defendants testified that without the land covered by the option, Tract I, the ranch unit of some 480 acres is an uneconomic unit and they would not have purchased the ranch unit without the option to purchase Tract I.

After some two years of operation on the ranch, certain differences arose between the parties and legal counsel was obtained to iron out the difficulties. On March 29, 1969, an agreement was signed by the parties, settling their differences and reaffirming the original lease and option agreement. By this release agreement the parties agreed on the amount and value of the 1966 and 1967 crop shares received by plaintiffs and provided for the payment by defendants of $3,829 to plaintiffs. It further provided that this sum would be applied to the 29% down payment, in the event defendants exercised the option to purchase Tract I.

In November 1969, defendants directed their counsel to prepare a written notice of their intention to exercise the option to purchase Tract I. Both defendants signed the notice, had it acknowledged, and returned it to their counsel in Great Falls. We note here that one copy of the signed notice was recorded in Hill County with the farm lease on November 13, 1969, by defendant Kenneth Lotton. The other copy was forward to his attorney in Great Falls.

Defendants' counsel testified he received the signed notice of intention to exercise the option to purchase from the defendants and that on November 19, 1969, he forwarded it, along with a cover letter, to the plaintiffs at their address in Lusk, Wyoming. Both he and his secretary testified that to the best of their knowledge the letter and notice were processed on that date and mailed, but neither recollected why it was sent by ordinary mail.

Plaintiff, Kenneth Gropp, denied ever receiving the notice of intention to exercise the option and testified that the first time he knew of this notice was on October 5, 1970, when he went to the ranch to see what the defendants intended to do about Tract I. At that time, he was informed by defendant Kenneth Lotton that the option had been exercised nearly a year before and that a copy of the notice had been filed at the Hill County courthouse.

We note here that although the parties involved had signed a release agreement in 1969, to settle their differences up to that point, bad feeling continued and although they had seen each other several times between 1969 and 1970, no communications, verbal or otherwise, took place directly between the parties. It was on October 5, 1970, over a month after the expiration date of the option, that plaintiff Gropp went to the ranch to find out why defendant was not off of Tract I. There is a conflict in the evidence as to what happened on that date, October 5, 1970. Defendant Lotton testified he informed Gropp that he had exercised the option and had filed the notice at the Hill County courthouse. That plaintiff Gropp then left the ranch, saying that he would contact defendants' counsel and later be in touch with defendants. Plaintiff Gropp denied that this happened. He testified he went to the courthouse to verify that the notice had been filed; then sought counsel and filed a quiet title action on October 7, 1970.

Following their settlement of differences in March 1969, defendants made no tender on the balance remaining on the down payment and pointed out that no determination of that balance

could be made until the end of the 1970 harvest. Further, that in order to compute the remaining balance due on the down payment it was necessary for defendants to have the figures for the cash price received by the plaintiffs on their share of the 1969 and 1970 crops. Figures for previous years had been furnished to them by plaintiffs, and although they had made an effort to get those figures from the elevators where the shares were stored, they had been unable to get such cash figures. Plaintiffs admitted they did not give this information to defendants for the 1969 and 1970 crops, saying that the defendants did not ask for them.

The trial court found defendants owed plaintiffs the sum of $7,023.15 on the down payment. It further found that at the time the contract and lease were entered into it was the intent of the parties, if the option was exercised, that a contract for deed would be negotiated and entered into by the parties incorporating the purchase terms set forth in the option and other terms similar to those included in the contract for deed dated September 25, 1965.

While plaintiffs set forth some fifteen issues for review upon appeal, we find those issues can be combined into four controlling issues.

1. Whether the contract resulting from acceptance of the option offer in question is sufficiently definite and certain as to be subject to specific performance.

2. Whether the provision of the option offer with respect to notice of intent to exercise the option was sufficiently complied with.

3. Whether delay in tender of the balance due on the down payment for the option was excused and waived by the impossibility of its computation and the conduct of plaintiffs.

4. Whether the court erred in striking testimony relative to a polygraph examination of plaintiff Kenneth Gropp.

Issue 1 questions whether the contract resulting from acceptance of the option offer in question is sufficiently definite and certain as to be subject to specific performance.

- 5 -

As a preface to our discussion, we note some fundamental rules regarding contracts. If the language of the contract is such that the intent of the parties is clearly and unequivocally expressed, it must be applied according to the terms of the contract. Conversely, if there is a basis in its language upon which the parties reasonably could have had a misunderstanding with respect to its intent, then evidence can be received and considered to ascertain the meaning of the language used. Warner v. Johns, 122 Mont. 283, 201 P.2d 986. The court in making a determination of intent is not bound by any single provision or expression, but looks to the whole contract and its purpose. McNussen v. Graybeal, 146 Mont. 173, 405 P.2d 447; Dooling v. Bright-Holland Co., 152 Mont. 267, 448 P.2d 749; Williams v. Ins. Co. of North America, 150 Mont. 292, 434 P.2d 395.

Plaintiffs argue that the option contract is an agreement to agree and therefore void. With this contention we find no merit. The real question is whether or not the acceptance of the option offer by defendants resulted in an agreement sufficiently definite and certain to create a binding contract.

Here, the parties negotiated a contract for deed for the purchase of certain ranch property setting forth therein the extension of a lease and option to purchase additional land and terms applicable, if the option was exercised. The lease, which was executed within a week of the date of the contract for deed, contained the option to purchase as set forth in the contract, therefore the two instruments should be construed together. Hodgkiss v. Northland Petroleum Consol., 104 Mont. 328, 349, 57 P.2d 811; United States Nat. Bank of Red Lodge v. Chappell, 71 Mont. 553, 230 P. 1084.

Testimony indicated the parties at the time of the making of the option agreement contemplated a contract similar to "farm contracts" in use for the sale of farm land in the area and on like terms as the initial contract for deed. Here, the contract

- 6 -

for deed sets forth the consideration upon which plaintiffs extended the lease-option. Defendants considered the base unit of 480 acres uneconomic and would not have purchased it without the option for Tract I. Terms of the option agreement provided for a fifteen year term following the five year lease term, which coincided with the contract for deed, with the same interest rate and the same final payment year. It can be fairly implied, as the trial court did, from the language of the two agreements, that the parties considered the properties to be purchased in one concurrent harmonious transaction.

This Court in Steen v. Rustad, 132 Mont. 96, 106, 313 P.2d 1014, held:

> "It is equally well-settled that absolute certainty and completeness in every detail is not a prerequisite of specific performance, only reasonable certainty and completeness being required. Those matters which are merely subsidiary, collateral, or which go to the performance of the contract are not essential, and therefore need not be expressed in the informal agreement."

Issue No. 2 questions whether or not the provision of the option offer with respect to notice of intent to exercise the option was sufficiently complied with. Plaintiffs contend that since neither defendants' counsel nor his secretary could specifically remember mailing the letter and notice, and because it was not sent by either registered or certified mail, there was insufficient evidence before the court to sustain a finding that the letter and notice was mailed. We cannot agree with this contention.

The question of what is a proper mailing has been before the Court on several occasions, the latest being Crissey v. State Highway Comm'n, 147 Mont. 374, 413 P.2d 308. There, as here, testimony was introduced by the writer of the letter that he had signed the letter and placed it in the outgoing mail basket. Here, we have the additional testimony of the secretary, who typed and addressed the letter, and who testified that to the best of her knowledge the letter was mailed along with other

office mail at the end of the business day. The trial court found the presumption of receipt was applicable, though plaintiffs denied receipt. The trial court either believed plaintiffs were mistaken; that they had forgotten, or they were not telling the truth; and relied upon the circumstantial evidence in making its decision. The trial court is the trier of the facts.

Here, the trial court's conclusion that the option was exercised is supported not only by the finding that the notice was mailed to plaintiffs, but also by additional evidence that plaintiffs may have had actual notice of defendants' intent. Plaintiffs did get actual notice when they visited defendants at the ranch, shortly following the termination date of September 1, 1970. Here, no hardship resulted, such as the intervention of a third party; defendants stand willing and ready to perform; and the question of the receipt of the mailed letter should not cause a forfeiture of the option to purchase where no hardship resulted. 72 ALR2d 1122; Pomeroy's Specific Peformance of Contracts, 3rd Ed., § 371, p. 793.

Issue 3 questions whether the delay in tender of the balance due on the downpayment for the option was excused and waived by the impossibility of its computation by conduct of the plaintiffs. The trial court found so, and we agree. Plaintiffs argue that the tender of the balance due was of the essence to the contract. A careful study of the evidence reveals that prior to 1969, plaintiffs gave defendants the necessary figures to compile the amounts due yearly. Thereafter, due to a breakdown in communications between the parties, for which plaintiffs are at least equally responsible, these figures were not furnished. As to 1970, final computation could not be made until the 1970 crop was sold. Plaintiffs requested the amount be figured on October 5, 1970. Considering the terms of the contract, plus plaintiffs' lack of diligence in giving the defendants the necessary figures, the month intervening between the date when defendants were either to have exercised the option or be off

the property, and the date of October 5, 1970, we cannot find that an unreasonable time for tender had passed.

Plaintiffs' fourth and final issue concerns whether or not the court erred in striking testimony relative to a polygraph examination of the plaintiff Kenneth Gropp. In a sense, this issue is connected to issue 2, whether or not there was a mailing to plaintiffs of the notice of intent to exercise the option.

Plaintiff Kenneth Gropp, in order to prove he did not receive the letter containing the notice of intent to exercise the option to purchase, submitted himself to a polygraph test. The results of this test were submitted to the court to assist it in determining whether or not plaintiffs received the letter, but were excluded by the trial court. Plaintiffs assert that the test was given by a competent polygraph operator; that Kenneth Gropp was a fit person for the test; that the test is from 75% to 80% accurate on a nationwide basis; and, that electro-encephalograms, electrocardiograms and other electrical recordings for medical diagnosis are admissible. Anno. 66 ALR2d 536. For these reasons, plaintiffs contend such offered evidence should have been received.

We do not agree. Few jurisdictions allow the polygraph tests in criminal actions. State v. Hollywood, 138 Mont. 561, 358 P.2d 437; State v. Cor, 144 Mont. 323, 396 P.2d 86; State v. Freeland, 255 Iowa 1334, 125 N.W.2d 825; State v. Trimble, 68 N. Mex. 406, 362 P.2d 788; State v. LaForest, 106 N.Hamp. 159, 207 A.2d 429. An extensive research reveals fewer jurisdictions have considered such evidence in civil actions. Stone v. Earp, 331 Mich. 606, 50 N.W.2d 172; Rotheimer v. Rotheimer, 34 Ill.App.2d 1, 180 N.E.2d 356; People v. Schneemilch, 65 Ill. App.2d 337, 213 N.E.2d 50; California Ins. Co. v. Allen, 235 F.2d 178; Herman v. Eagle Star Ins. Co., 283 Fed. Supp. 33. Here,

after hearing the evidence offered by the polygraph expert at the trial, the court properly excluded his testimony.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____

_____

_____
Associate Justices.

Mr. Chief Justice James T. Harrison took no part in the foregoing opinion.