No. 13317

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

RALPH GUTHRIE and GERTRUDE GUTHRIE,
husband and wife, d/b/a Guthrie
Centers Company,

Plaintiffs and Respondents,

-vs-

DEPARTMENT OF SOCIAL AND REHABILITATION
SERVICES OF THE STATE OF MONTANA,

Defendant and Appellant.

---

Appeal from: District Court of the First Judicial District,
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Thomas H. Mahan argued, Helena, Montana

For Respondents:

Smith, Smith and Sewell, Helena, Montana
Chadwick H. Smith argued, Helena, Montana

---

Submitted: January 20, 1977

Decided: APR 21 1977.

Filed: APR 21 1977

Thomas J. Kearney

_Clerk_

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The Department of Social and Rehabilitation Services of the state of Montana (SRS) appeals from the order of the district court, Lewis and Clark County, granting plaintiffs' motion for summary judgment. Plaintiffs sought a declaratory judgment under section 93-8901, R.C.M. 1947, and a determination of reasonable costs and profit allowance allegedly due them.

Plaintiffs, doing business as Guthrie Centers Company, own and operate the Libby Convalescent Center, a nursing home located in Libby, Montana, licensed by the state of Montana to provide skilled nursing care and related services to its residents. The Center commenced operation in February 1971, and has been under contract with SRS since March 1971 to provide skilled and intermediate nursing home care to welfare recipients.

The first contract which plaintiffs executed with SRS, entitled Annual Agreement, provided that plaintiffs would receive $12.00 per day for each patient requiring skilled nursing care and $10.00 per day for each patient requiring intermediate care for the period March 1, 1971 through February 29, 1972. The contract stated the rates would be reevaluated annually, or upon receipt of bona fide evidence indicating costs had varied a minimum of 10% or more, within the limitations and availability of SRS funds. This contract was executed in compliance with SRS's "GUIDELINES FOR REIMBURSEMENT FOR SKILLED NURSING HOME CARE AND INTERMEDIATE CARE BASED ON REASONABLE COST", effective June 1, 1970, which provided that new facilities, commencing operation where no cost data was available, would be afforded a negotiated interim rate subject to subsequent review, based on reasonable costs, after a

- 2 -

minimum period of six months operation and a minimum of 80% occupancy.

On August 15, 1971, the government initiated Phase I of its Economic Stabilization Program. SRS, purportedly in compliance with the wage-price freeze, refrained from increasing the rates for nursing home care. On July 1, 1972, upon removal of wage-price restrictions, SRS increased the rate for skilled nursing care to $13.31 per day and increased the rate for intermediate care to $12.30 per day.

Subsequent to the increase in rates and removal of wage-price restrictions, the parties entered into a second agreement for nursing home care covering the period December 22, 1972 through December 22, 1973. On May 1, 1973, SRS again increased the rates for nursing home care to $14.27 per day for skilled care and $13.24 per day for intermediate care. These increased rates were maintained for the remainder of the time period contemplated in the instant suit. SRS contends these rates are the same rates plaintiffs charged their private patients.

On November 29, 1974, plaintiffs filed a complaint in the district court seeking (1) a determination of plaintiff's rights pursuant to the agreements between the parties, statutes and rules and, (2) a determination of reasonable costs and profit allowance due plaintiffs for the period March 1, 1971 through December 31, 1973. Subsequently, plaintiffs filed a motion for summary judgment, granted by the district court and entered on December 31, 1975.

The controlling issue on appeal is whether the entry of summary judgment for plaintiffs was error. We find the granting of summary judgment was error. The judgment is vacated and the cause remanded to the district court for further proceedings.

Rule 56(c), M.R.Civ.P., states that summary judgment shall be rendered only if:

"* * * the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The general purpose underlying Rule 56, M.R.Civ.P., is to promptly dispose of actions which have no genuine issue of fact, thereby encouraging judicial economy through the elimination of unnecessary trial, delay and expense. Silloway v. Jorgenson, 146 Mont. 307, 406 P.2d 167. Nevertheless, summary judgment is not a substitute for a trial. Johnson v. Johnson, _____Mont._____, _____P.2d_____, 34 St.Rep. 162. See: Harland v. Anderson, _____Mont._____, 548 P.2d 613, 33 St.Rep. 363, for a discussion of summary judgment under Rule 56(c), M.R.Civ.P.

The grounds upon which the district court granted plaintiffs' motion for summary judgment were:

1. There was no genuine issue as to any material fact.

2. Financial statements and cost reports were timely submitted by plaintiffs.

3. The Libby Convalescent Center reached an 80% patient capacity by the end of the 1971 calendar year, after more than six months operation.

4. Plaintiffs were entitled to review and adjustment of the interim daily reimbursement rates based upon plaintiffs' reasonable costs as shown by their financial statements and cost reports.

5. The Federal Economic Stabilization Program did not prevent SRS from increasing rates as a result of the increase in the size of the plaintiffs' work force and increased outlay for supplies and equipment at stabilized wages and prices.

- 4 -

6. Reimbursement rates for providing nursing home services to medicaid patients were not limited to the rate plaintiffs charged private patients at the Libby Convalescent Center in 1971, 1972 and 1973, such reasonable costs being limited by the amount plaintiffs charged private patients in 1974, i.e. $16.00 per day for skilled nursing care and $15.00 per day for intermediate care.

7. That plaintiffs were entitled to judgment as a matter of law.

The district court then concluded, as a matter of law:

a) That SRS Guidelines for Reimbursement provided for retroactive rate increases;

b) plaintiffs were entitled to a rate increase after six months operation, since the Libby Convalescent Center was operating at 80% occupancy and had incurred increased costs of operation; and

c) reasonable reimbursement rates for nursing home care for welfare recipients could exceed those rates charged private patients in the years 1971,1972 and 1973.

Plaintiffs contend the district court correctly granted summary judgment as a matter of law and should be affirmed on appeal.

One of the prindpal disagreements between the parties is whether reimbursement rates can be increased and given retroactive effect. SRS contends the original contract between the parties provided a negotiated interim rate which was to be reevaluated annually or upon receipt of bona fide evidence establishing a variation of costs by a minimum of 10%. Lee v. Laitinen, 152 Mont.

230, 448 P.2d 154. SRS argues once reevaluation occurred any increase in rates would apply prospectively with the exception of the 60 day period allowed for the filing of financial statements and cost reports.

Plaintiffs, on the other hand, contend the SRS Guidelines for Reimbursement and the second contract provide for fiscal retroactive treatment of rate increases. The applicable language of the contract reads:

> "* * * Reports received after 60 days will forfeiture any right for retroactive increase to the beginning of your fiscal year."

Since this language standing alone does not appear to support the conclusion that rate increases could be retroactively applied to prior fiscal years, a genuine issue as to a material fact remains unresolved and therefore evidence should be taken concerning the intent of the contracting parties at the time the agreement was executed and past business practices involving rate increases and their effect. Kober & Kyriss v. Billings Deac.Hosp., 148 Mont. 117, 417 P.2d 476.

Second, SRS questions the determination that the Libby Convalescent Center was operating at 80% occupancy and thus entitled to a rate increase. SRS contends the 80% occupancy level pertained to each individual class of service, not the total occupancy level of the facility. Plaintiffs, in their answers to request for admissions, stated the occupancy level for skilled nursing care at the Libby Convalescent Center never reached 80% for the three years in question. Plaintiffs contend that total occupancy level controls and they are only able to satisfy the 80% occupancy level by combining the occupancy level of skilled nursing with the occupany level of intermediate care.

- 6 -

The Guidelines for Reimbursement provides:

> "* * * New facilities commencing operations for which
> no cost data is available will be afforded a negotiated
> interim rate subject to subsequent review based on
> reasonable costs after a minimum period of six months
> operation and <u>a minimum of 80 percent occupancy.</u>" (Emphasis
> added.)

The general language of the Guidelines for Reimbursement is open
to interpretation when coupled with the consideration that rates
for nursing care are increased for specific levels of care and
not for care in toto. SRS should have been allowed the opportunity
to present evidence construing the meaning of "80 percent occupancy".
Gropp v. Lotton, 160 Mont. 415, 503 P.2d 661.

A third issue resolved by the district court was the question
of whether reimbursement rates for nursing home care could exceed
the rates charged private patients at the Libby Convalescent Center.
A genuine and material question of fact arises as to the reason-
ableness of rates for the nursing care of welfare recipients when
those rates exceed the rates charged private patients.

Genuine issues of material fact remain that have not been
resolved and plaintiffs are not entitled to summary judgment as
a matter of law, therefore this action is remanded to the district
court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 8 -