The People of the State of New York, Respondent, v Joseph Tarsia, Appellant.

Third Department, April 5, 1979

### APPEARANCES OF COUNSEL

*Remo A. Allio* for appellant.

*Patrick D. Monserrate, District Attorney,* for respondent.

### OPINION OF THE COURT

Mahoney, P. J.

Defendant's wife was injured when she was struck by a shotgun slug while she was standing in the doorway of her farmhouse. The police initially investigated the shooting as a hunting accident, but thereafter focused their attention on defendant who was hunting on the property behind the farmhouse and returned to the house after the shooting in possession of a gun incapable of firing the slug which struck his wife. Ten days after the incident, Investigator Gavula of the Broome County Sheriff's office interviewed defendant who denied responsibility for the shooting but agreed to take a

voice stress evaluation test (stress test). On the date arranged for the test, Gavula read defendant the *Miranda* warnings, but did not advise defendant that he was a suspect in the investigation of a possible assault or attempted murder of his wife. Instead he was told that "a possible violation of shooting" was being investigated. The test was administered by Detective Gaul who first explained to defendant how the stress test worked and assured defendant that the test could not determine whether he was lying, but rather could only serve as a basis for further investigation. In fact, defendant was told that the test "would positively attempt to prove he was innocent of this shooting". However, after administering the test and evaluating its results, Gaul told defendant, "you know, it looks like you have a serious problem here; it doesn't look good from this particular test", and he then spoke with defendant for about 25 minutes, explaining what he thought were inconsistencies in defendant's story. Thereafter, defendant admitted that he shot his wife and subsequently signed two written confessions to that effect.

Initially, defendant contends that the court erred in denying his motion to suppress the confessions, arguing that although there was no police brutality or threats of physical force, his will was overborne by psychological coercion surrounding the use of the stress test. As this court recently noted, "[p]sychological coercion may be any method or technique which is intended to, or may, play directly or indirectly upon the defendant, so as to instill in him a sense of fear, foreboding, insecurity or other feeling which will induce, motivate or compel him to waive his rights and respond to questions posed by law enforcement officials. Psychological coercion, while difficult to assess, is a direct threat brought to bear by a sophisticated type of pressure" *(People v Byrne,* 66 AD2d 963, 965, quoting from *People v Zimmer,* 68 Misc 2d 1067, 1074, affd 40 AD2d 955). Generally, the use of a polygraph or lie detector test will not, in and of itself, render a confession inadmissible as the product of coercion, but its use or misuse is a factor to be considered in determining whether there was impermissible coercion based upon an examination of the totality of the circumstances surrounding the confession *(People v Leonard,* 59 AD2d 1, 12-15). In our view, the same holds true of the stress test employed herein.

Although there may be a certain amount of coercion inherent in any polygraph examination or stress test, particularly one conducted in conjunction with custodial interrogation, the

police tactics herein, while not to be applauded, constituted no more than mere deception or trickery, and as this court recently noted in *People v McGuffin* (55 AD2d 772, 773), under similar circumstances, "trickery without more does not make a confession inadmissible *(People v Pereira,* 26 NY2d 265; *People v Boone,* 22 NY2d 476, cert den *[sub nom. Brandon v New York]* 393 US 991; *People v McQueen,* 18 NY2d 337; *People v Solari,* 43 AD2d 610, affd 35 NY2d 876). The deception must be accompanied by a threat or promise before a confession becomes involuntary." Here, while defendant may have been deceived as to the scope and purpose of the stress test, there is no evidence of any threat or promise and, accordingly, defendant's contention must be rejected. We also reject defendant's contention that the length of the interrogation rendered his confessions involuntary (see *People v Clow,* 62 AD2d 880).

Defendant also contends that the trial court erred in admitting certain evidence relating to the stress test. Evidence obtained through the use of a polygraph test is generally inadmissible in a criminal case because the test's reliability has not yet been sufficiently established to give it an evidentiary standing in the administration of the criminal law *(People v Leone,* 25 NY2d 511), and the same rule must be applied to the stress test herein since the People concede its lack of reliability.

On direct examination, and also to some extent on cross-examination, Detective Gaul testified as to the facts and circumstances surrounding the stress test as administered to defendant. Thus, Gaul explained in detail his preliminary conversation with defendant, his explanation to defendant as to how the stress test worked and what he was looking for, the questions asked during the test and his conversation with defendant after the test leading to the initial oral admission. Defendant made no objection to any of this testimony until the People sought to introduce a tape recording of the questions asked during the test with defendant's answers. The trial court held that the test results were inadmissible but allowed the tape to be played to the jury. Since Gaul had already testified without objection as to his recollection of these questions and defendant's answers, we perceive no prejudice to the defendant in allowing the jury to hear the tape recording. It is apparent that defendant chose to allow, and, in fact, elicited detailed testimony as to the facts and circum-

stances surrounding the stress test for the purpose of convincing the jury that his confessions were involuntary. Having adopted this tactic, his belated objections to the evidence so admitted must be rejected.

The judgment should be affirmed.

MIKOLL, J. (dissenting). We respectfully dissent and would reverse the judgment.

The trial court permitted into evidence testimony of a police officer's interpretation of the results of a psychological stress evaluation test of the defendant whereby the degree of stress in defendant's voice occurring when he gave answers to police questioning was analyzed. In effect, defendant was administered a lie detector test and testimony relating to the test was introduced by the prosecutor in his direct case. This was error *(People v Leone,* 25 NY2d 511; Richardson, Evidence [10th ed], § 380; Ann. 23 ALR2d 1306). The District Attorney elicited from the test administrator, a Lieutenant Gaul, the following response: "In other words, when I see the results on the tape it should be good. There shouldn't be any real heavy stress in the area if he is telling me the truth, or there is no problem in that area." A few questions later, Lieutenant Gaul testified that when defendant was asked the "relevant question"—"Did you shoot your wife?"—heavy stress was indicated. The Lieutenant also testified on direct examination that he "saw stress indicated on the chart in regard to him shooting his wife." On cross-examination the witness testified that the test "registers the emotional traits if you are not telling the truth" and that the defendant would not be stressing if he were innocent. Such testimony is highly prejudicial and inadmissible.

Upon the trial, defendant objected to introduction of evidence of the stress test results when the prosecutor sought to introduce the tape recording of the test and the confession. Although the trial court ruled the test results would not be admissible and the prosecutor agreed, it overruled defendant's objections and by doing so, in effect, did what it stated it would not do. This was reversible error in the circumstances of this case *(People v McCain,* 42 AD2d 866). There was already before the jury testimony that defendant had been "stressing" or in other words lying, when asked certain "relevant questions" as opposed to "irrelevant questions." The tape contained portions of the test including these queries and responses. The combination, therefore, had the effect of repeating and emphasizing the prior improper testimony. This

was highly prejudicial to defendant. The real issue in the case was whether the defendant had shot his wife with the preformed intent to kill her. The test results established defendant to be a liar. Not only did the evidence of the psychological stress evaluation test usurp the function of the jury on the issue of credibility, but it also bolstered the credibility of the prosecution's witnesses. The prosecutor here admitted the test results were inadmissible, but, nevertheless, sought to do by indirection what admittedly could not be done directly. The prosecutor introduced the highly prejudicial subject to the jury in his opening, stating to the jury that the stress evaluation test was in some fashion similar to a lie detector test. He returned to this dangerous area in his direct case knowing he was thinly disguising inadmissible testimony. The trial court had the obligation to take necessary corrective action and to preclude further introduction of that type of testimony when defendant made his objection but erroneously failed to do so *(People v McCain, supra)*.

Main, J., concurs with Mahoney, P. J.; Kane, J., concurs in the result only; Sweeney and Mikoll, JJ., dissent and vote to reverse in an opinion.

Judgment affirmed.