STATE OF NORTH CAROLINA v. RENEE MAKERSON

No. 8029SC1005

(Filed 19 May 1981)

1. **Criminal Law § 35— offense committed by another—evidence properly excluded**

    The trial court did not err in refusing to admit into evidence testimony presumably showing that a person other than defendant had committed the crime in question, where no evidence had been introduced which linked the third person with the crime in any way; counsel asked a question of defendant's mother in hopes of presenting evidence that the third person had a motive to commit the crime; absent any other evidence that the third person might have committed the crime, the existence or non-existence of his motive was inadmissible; and such an inquiry was too speculative and remote to permit it into evidence.

2. **Criminal Law § 62— polygraph test—voice stress test—willingness of defendant to take—inadmissibility of evidence**

    Since the results of a polygraph test and a voice stress test would not be admissible in this case, the fact that defendant took the stress test and was willing to take the polygraph test was not competent evidence and was therefore properly excluded by the trial judge.

APPEAL by defendant from *Collier, Judge.* Judgment entered 31 July 1980 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 3 March 1981.

Defendant was properly indicted on the charge of first degree murder. At the start of trial, the State announced its in-

tention to seek a conviction for second degree murder or manslaughter. The jury returned a verdict of voluntary manslaughter, and the defendant was subsequently sentenced by the judge to a term in prison of not less than ten (10) nor more than fifteen (15) years.

The State's evidence tended to show that the defendant, Renee Makerson, and the deceased, Jobie Miller, had been drinking together from noon until midnight on 4 April 1980. Shortly after midnight, the two returned to Robert Thomas' house where Miller was staying. Thomas was already in bed when they arrived but overheard an argument between Miller and defendant. Defendant wanted three dollars from Miller in order to pay for a ride home, but Miller refused to give her any money. Thomas heard the defendant say to Miller, "If you don't give me $3.00, I'm going to kill you." Defendant then tore Miller's shirt. Miller and defendant left Thomas' house and walked next door to the home of Lula Wilkins. Once at the Wilkins' house, Miller knocked on the door and said, "let me in, Renee [Makerson] stabbed me." Inside the Wilkins' house, Miller lay down on the floor and died from a stab wound in the base of his throat. A subsequent police investigation revealed blood stains of the deceased running from the Thomas house porch, across the yard, to the Wilkins' house. A knife was found in the yard with blood stains matching the deceased's blood.

Defendant's evidence tended to show, however, that she never threatened the deceased; that she waited for Miller outside Thomas' house for about a minute before they began walking over to Wilkins' house; that Miller did not appear stabbed prior to leaving the Thomas house; and that someone ran by them in the dark as they walked from Thomas' house to Wilkins' house. Defendant was not able to identify the person who ran by them in the yard because she did not have on her glasses, and it was dark. Defendant told the police that the stabbing must have occurred as they walked to the Wilkins' house, but that she did not stab the deceased.

Defendant appeals from a verdict of guilty of voluntary manslaughter.

*Attorney General Edmisten, by Associate Attorney General William R. Shenton, for the State.*

*Robert G. Summey for the defendant appellant.*

BECTON, Judge.

[1] Defendant makes four assignments of error, but only brings forward two on appeal. First, defendant assigns as error the trial judge's refusal to admit into evidence testimony presumably showing Robert Thomas' guilt, rather than the defendant's guilt. At trial, defendant's attorney attempted to elicit testimony of ill will existing between the deceased and Robert Thomas. On direct examination of defendant's mother, Margaret Makerson, the following transpired:

Q. Do you know anything else about any problems that Robert Thomas might have had [with Jobie Miller]. . .

Mr. Leonard: Objection.

The Court: Sustained.

The witness' answer to this question was never placed in the record for review on appeal.

As pointed out in a recent decision of this court, "[t]he law of this State with respect to the admissibility of evidence tending to show the guilt of one other than the accused has been described by our Supreme Court as being 'rather unsettled.' *State v. Gaines,* 283 N.C. 33, 41, 194 S.E. 2d 839, 845 (1973)." *State v. Britt,* 42 N.C. App. 637, 641, 257 S.E. 2d 468, 470-71 (1979). For many years, the North Carolina Courts, as a general rule, prohibited a defendant from introducing evidence of another's guilt except in very specialized situations. *See generally State v. White,* 68 N.C. 158 (1873); *State v. Baxter,* 82 N.C. 602 (1880) (evidence must not only implicate another, but also must be completely inconsistent with the guilt of the defendant). This rule has consistently come under harsh criticism, and "the rule has been gradually whittled away so that it may fairly be said that today there is no special rule on the subject." 1 Stansbury § 93 at 302 (Brandis rev. 1973); *see also* Wigmore on Evidence, §§ 139-142 (3d ed. 1940).

The rule of admissibility of evidence that someone other than the defendant committed the crime hinges on relevancy. Considering all the facts and circumstances of the case, "the admissibility

of such evidence [of another's guilt] should depend upon its relevency in the case in which it is offered—whether it logically tends to prove or disprove some material fact at issue in the particular case." *State v. Britt*, 42 N.C. App. at 641, 257 S.E. 2d at 471. *See also State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839 (1973); *State v. Couch*, 35 N.C. App. 202, 241 S.E. 2d 105 (1978); 1 Stansbury, *supra*, at § 93. In order to admit evidence of another person's guilt of the crime charged against the defendant, there must be some proof that the person is connected with the crime or proof of some sequence of facts or circumstances tending to implicate someone other than the accused. 1 Wharton's Criminal Evidence § 163 (13th ed. 1974).

Frequently, defendants have attempted to show that another person had either the motive or the opportunity to commit the offense charged as a means of creating doubt in the jurors' minds concerning the defendant's guilt. North Carolina case law is replete, however, with decisions holding that mere evidence that one other than the defendant had a motive *or* the opportunity to commit the crime is not enough to make the evidence admissible. The theory of the courts has been that this evidence alone is too remote to be relevant. *See State v. Jenkins*, 292 N.C. 179, 232 S.E. 2d 648 (1977); *State v. Shinn*, 238 N.C. 535, 78 S.E. 2d 388 (1953); *State v. Smith*, 211 N.C. 93, 189 S.E. 175 (1937). The courts also have been clear that "[e]vidence which can have no effect except to cast suspicion upon another or to raise a mere conjectural inference that the crime may have been committed by another, . . . is not admissible." 238 N.C. at 537, 78 S.E. 2d at 389; *State v. Jones*, 32 N.C. App. 408, 413, 232 S.E. 2d 475, 478, *cert. denied*, 292 N.C. 643, 235 S.E. 2d 63 (1977).

In the case at bar, no evidence had been introduced which linked Robert Thomas with the murder in any way. Counsel asked the question of defendant's mother in hopes of presenting evidence that Robert Thomas had a motive to commit the murder. However, absent any other evidence that Thomas might have committed the crime, the existence or nonexistence of his motive is inadmissible. 1 Wharton's Criminal Evidence, *supra*, at § 163. In this case, such an inquiry was too speculative and remote to permit it into evidence. The trial judge was therefore correct in sustaining the objection.

[2]   The defendant next argues that the trial judge erred in not permitting her to present evidence that she was willing to take a polygraph test and did in fact take a voice stress test. The results of the polygraph test and voice stress tests are not considered by the courts in this State to be reliable, and as such are generally not admissible. *State v. Jackson,* 287 N.C. 470, 215 S.E. 2d 123 (1975) (polygraph test); *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975) (polygraph test); *State v. Milano,* 297 N.C. 485, 256 S.E. 2d 154 (1979) (stress evaluation tests). The results may be admitted if both the district attorney and the defendant agree to their admissibility by way of stipulation. *State v. Jackson, supra; State v. Foye,* 254 N.C. 704, 120 S.E. 2d 169 (1961). Since the results of the polygraph test and the stress test would not be admissible in this case, the facts that the defendant took a stress test and was willing to take a polygraph are simply not competent evidence and were therefore properly excluded by the trial judge.

Defendant cites a few cases in which this court and the Supreme Court have found that not every reference to a polygraph test results in prejudicial error. *State v. Kirkman,* 293 N.C. 447, 238 S.E. 2d 456 (1977); *State v. Montgomery,* 291 N.C. 235, 229 S.E. 2d 904 (1976); *State v. Williams,* 279 N.C. 515, 184 S.E. 2d 282 (1971); *State v. Heath,* 25 N.C. App. 71, 212 S.E. 2d 400 (1975). These cases, however, do not suggest that polygraph tests and stress tests are, in any way, reliable. We subscribe to a strict enforcement of the general principle that all references to these tests should be kept from the hearing of the jury. If the results of the test are not competent evidence, then references to the tests are not relevant and should be held inadmissible, as was done in this case. For the foregoing reasons, we find

No Error.

Judge VAUGHN and Judge WELLS concur.