MICHIGAN STATE EMPLOYEES ASSOCIATION v CIVIL SERVICE
COMMISSION

Docket No. 64861. Submitted April 11, 1983, at Lansing.—Decided
July 6, 1983. Leave to appeal applied for.

Charleston Gregory, Jr., was employed as an intake worker with
the Department of Social Services. He was discharged for
misconduct constituting a crime. He and his union, Michigan
State Employees Association, filed a grievance, and the Civil
Service Commission upheld the department's discharge of him.
The Ingham Circuit Court, Jack W. Warren, J., affirmed. Greg-
ory and the union appealed. *Held:*

1. Due process does not require a hearing officer at a civil
service discharge hearing to employ a beyond a reasonable
doubt standard even where the misconduct allegedly engaged
in constitutes criminal conduct. Proof by a preponderance of
the evidence is sufficient.

2. The proper standard of judicial review to be employed
when reviewing an administrative decision is whether that
decision is supported by competent, material, and substantial
evidence to support the commission's decision.

3. Evidentiary rulings in administrative proceedings may
stray from rigid courtroom rules on evidence; in contested cases
before an administrative agency a factfinder may admit and
give probative effect to evidence of a type commonly relied
upon by reasonably prudent men in the conduct of their affairs.
The hearing officer's admission of hearsay evidence was not
improper.

Affirmed.

1. CIVIL SERVICE — BURDEN OF PROOF — DISCHARGE — DUE PROCESS.
Due process does not require a hearing officer at a civil service
discharge hearing to employ a beyond a reasonable doubt
standard even where the misconduct allegedly engaged in

REFERENCES FOR POINTS IN HEADNOTES
[1] 15A Am Jur 2d, Civil Service § 66.
[2] 2 Am Jur 2d, Administrative Law §§ 688, 689.
[3] 2 Am Jur 2d, Administrative Law § 686.

constitutes criminal conduct; proof by a preponderance of the evidence is sufficient.

2. ADMINISTRATIVE LAW — APPEAL — STANDARD OF REVIEW.

The proper standard of judicial review to be employed when reviewing an administrative decision is whether that decision is supported by competent, material, and substantial evidence on the whole record.

3. EVIDENCE — ADMINISTRATIVE LAW — RIGID RULES — REASONABLY PRUDENT MEN — CONDUCT OF AFFAIRS.

Evidentiary rulings in administrative proceedings may stray from rigid courtroom rules on evidence; in contested cases before an administrative agency a factfinder may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh*), for appellants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janice Meija* and *Christopher D. Dobyns,* Assistants Attorney General, for appellee.

Before: DANHOF, C.J., and ALLEN and D. F. WALSH, JJ.

DANHOF, C.J. Petitioners appeal by right from an Ingham County Circuit Court order affirming the decision of the Civil Service Commission (commission) that petitioner Charleston Gregory, Jr., was properly dismissed for cause by the Department of Social Services (department).

Gregory was employed as an intake worker with the department from February 11, 1975, until his discharge on November 1, 1979. The events leading to his discharge began on April 23, 1979, when a claim for emergency assistance was requested by Margaret Rhoades. Rhoades testified that she in-

formed Gregory that her utility service had been discontinued and requested funds to enable her to have the service resumed. Gregory advised her that she was entitled to some assistance but that she would be required to make a co-payment of $200. Rhoades returned on the following day with a personal check for $200. However, Gregory refused to accept the check. Therefore, the next day she cashed the check and handed Gregory $200 cash in an envelope. On April 27, 1983, the emergency aid was authorized.

When Rhoades attempted to have her utility service resumed she was informed that she needed approximately $100 more aid than she had been given. Therefore, she again visited Gregory's office where she was informed that an additional co-payment of $48 would be required. When she informed Gregory that she did not have the money, he told her that he would loan it to her. Gregory visited her home the following day at which time she repaid him in cash.

In August, 1979, Rhoades sought additional emergency assistance before a different intake worker. She was informed by the intake worker that additional assistance was unavailable because Rhoades had failed to maintain her utility payments after receiving emergency assistance in April. When she told the intake worker that she had been unable to meet those payments because of the co-payment she had been required to make in connection with the April assistance, the worker informed her that the records indicated that Rhoades had received the full amount of the requested assistance in April and that all co-payments had been waived. It was at that point that Rhoades explained the circumstances surrounding the April claim to the intake worker who in turn

confronted Gregory with the allegations. Gregory denied having received any money from Rhoades.

Rhoades testified that later that same day she was approached by Gregory who told her not to pursue the matter any further. Her testimony was corroborated by the testimony of David Reeve who was employed as a legal intern at a legal aid office located in the same building as Gregory's. He testified that Rhoades was in his office when a man knocked on the door and asked to speak with her in the hallway. Although Reeve was unable to identify the man he had seen Rhoades leave with, he testified that when Rhoades returned to his office after talking with the man, she told him that the man was Gregory and informed him of the nature of Gregory's demand.

Rhoades's testimony was also corroborated by the testimony of an acquaintance who testified that Rhoades told her two days after she received the April assistance that she had been required to make a co-payment.

Over Gregory's relevancy objection, the department was permitted to introduce the testimony of another departmental employee who testified that a similar complaint against Gregory had been made by another client of the department on a previous occasion.

Also over petitioner's objection, the department was permitted to introduce evidence that Rhoades had taken and passed a polygraph examination.

Gregory testified on his own behalf and denied all of the allegations. In an effort to impeach Rhoades's credibility, he testified that Rhoades had lied about her resources when applying for monetary assistance on various occasions. He also claimed that she was untruthful in her representa-

tions concerning the number of people who resided with her.

The hearing officer acknowledged that the case turned solely on the issue of credibility. She resolved the issue in favor of Rhoades because: (1) the testimony of Reeve which tended to corroborate Rhoades's story that she was approached by Gregory in an effort to dissuade her from pursuing the complaint; (2) Rhoades had little reason to lie; (3) it took five days to process Rhoades's April emergency assistance request when normally such requests are handled in a single day; (4) a similar complaint had been made against Gregory on a previous occasion; and (5) the complex nature of the circumstances described by Rhoades (*i.e.,* the hearing officer found it difficult to believe that Rhoades could fabricate such a story).

The commission adopted the hearing officer's determination. The circuit court affirmed the commission's decision.

Petitioners initially claim that due process was violated because the hearing officer used the "preponderance of the evidence" standard of proof to determine whether Gregory had engaged in the complained-of conduct. They claim that the misconduct Gregory was alleged to have been engaged in constituted criminal conduct and that the more stringent "beyond a reasonable doubt" standard of proof applicable in criminal cases should have been employed.

We agree with petitioners that the protections required by due process are greater where a person's good name, reputation, honor, or integrity are at stake. See *Bd of Regents of State Colleges v Roth,* 408 US 564, 573; 92 S Ct 2701; 33 L Ed 2d 548 (1972). However, we do not agree that due process requires that the standard of proof utilized

at a discharge hearing be greater than the "preponderance of the evidence" standard.

Although we have found no Michigan case dealing with this issue, a similar issue was raised in *Alsbury v United States Postal Service,* 530 F2d 852 (CA 9, 1976). In *Alsbury, supra,* the appellant, a postal employee, was discharged for unlawfully removing postal property from the post office at which he was employed. He had previously been acquitted on criminal charges arising out of the same alleged misconduct. In rejecting the claim that his acquittal on the criminal charges precluded his discharge, the Court stated the following:

"In the criminal trial the Government must prove its case beyond a reasonable doubt, *while in a discharge proceeding proof based on a preponderance of the evidence is sufficient.* These distinctions have been recognized by other courts when confronted by a contention such as the appellant makes. *See Kowal v United States,* 412 F2d 867, 870; 188 Ct Cl 631 (1969); *Finfer v Caplin,* 344 F2d 38, 41 (CA 2 [1965]), *cert den* 382 US 883; 86 S Ct 177; 15 L Ed 2d 124 (1965). Acquittal thus does not make the dismissal arbitrary. To hold otherwise would impose a barrier to Postal Service improvement which properly should function only to prevent a deprivation of liberty." 530 F2d 855. (Emphasis supplied.)

The rule stated in *Alsbury, supra,* is consistent with the general rule in the United States with respect to civil actions where conduct which would otherwise be criminal is alleged:

"It is well settled in substantially all the jurisdictions in the United States, or at least in all those in which the question has been directly raised, that facts constituting a crime need not be proved beyond a reasonable doubt if they are at issue in a civil action, but that it is

sufficient to prove the existence of the criminal act by a preponderance of the evidence. Thus, although facts may be alleged that, if true, constitute guilt in the party charged, for which he might be indicted and punished, it does not follow that the proof, in order to maintain the cause of action or defense, must be such as would convict the party charged of the crime, if upon trial under an indictment. Thus, in a civil action where there is an allegation of fraud or forgery, or a criminal misappropriation of property, or false representations, or a trespass which might subject the trespassers to criminal prosecution, proof beyond a reasonable doubt is not required, and it is generally held that a preponderance of the evidence is sufficient. In a civil action for assault and battery, the fact that the act forming the basis of the action is also a crime does not require the plaintiff to sustain the allegations of his complaint by proof beyond a reasonable doubt." 30 Am Jur 2d, Evidence, § 1169, pp 347-348. See also *Martucci v Detroit Comm'r of Police,* 322 Mich 270, 274; 33 NW2d 789 (1948).

In view of the foregoing, we are unwilling to accept petitioners' claim that the hearing officer was required to employ a higher standard of proof than the "preponderance of the evidence" standard.

Our review of the decision, therefore, is to determine whether there was competent, material and substantial evidence to support the decision. Const 1963, art 6, § 28; *Viculin v Dep't of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971). The fact that the "preponderance of the evidence" test was the standard of proof utilized at the hearing does not elevate our standard of review. See *Meadows v Marquette Prison Warden,* 117 Mich App 794, 798-799; 324 NW2d 507 (1982).

Our review of the record convinces us that the decision of the hearing officer was supported by such evidence as a reasonable mind would accept

as adequate to support the decision. *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 122-124; 223 NW2d 283 (1974). Therefore, we find that substantial evidence existed on the whole record to uphold the hearing officer's determination.

Petitioners next complain that some of the evidence upon which the hearing examiner relied was not "competent" evidence.

Petitioners complain that the hearing officer improperly admitted the testimony of a departmental employee who testified that another client had previously accused Gregory of similar misconduct.

We initially note that petitioners' only objection to the admission of this evidence at the hearing was that it was irrelevant. On appeal they claim that the evidence should have been excluded because it constituted inadmissible hearsay. Since petitioners' failure to object on that basis at the hearing deprived the hearing officer of the opportunity to pass on that objection, the issue is not properly preserved for review. *Keefer v C R Bard, Inc,* 110 Mich App 563, 576; 313 NW2d 151 (1981); *American Way Service Corp v Comm'r of Ins,* 113 Mich App 423, 427-428; 317 NW2d 870 (1982).

Even assuming that the issue had been properly preserved, we find it to be without merit. Evidentiary rulings in an administrative proceeding are not the same as those in courts of law. *Viculin v Dep't of Civil Service, supra,* p 403. Admissible evidence includes that which is commonly relied on by reasonably prudent persons in the conduct of their affairs. *Viculin, supra; Rentz v General Motors Corp,* 70 Mich App 249, 253; 245 NW2d 705 (1976).

In *Viculin, supra,* the Supreme Court ruled that evidence of charges relating to unsatisfactory work is admissible in civil service hearings. We do not find that this evidence is materially different from the evidence admitted in *Viculin, supra.*

Petitioners also complain that the hearing officer erroneously admitted evidence that Rhoades had taken and passed a polygraph examination.

At present, the results of polygraph examinations are not admissible at trial, either civil or criminal. *People v Barbara,* 400 Mich 352, 364; 255 NW2d 171 (1977); *Stone v Earp,* 331 Mich 606, 611; 50 NW2d 172 (1951). At least one panel of this Court, although not directly addressing the issue, has at least intimated that such evidence is inadmissible in administrative hearings. *Sponick v Detroit Police Dep't,* 49 Mich App 162, 190; 211 NW2d 674 (1973).

We find it unnecessary to address this issue. Even assuming that the evidence was inadmissible, it is clear that Gregory was not prejudiced by its admission. See *Winokur v State Bd of Dentistry,* 366 Mich 261, 265; 114 NW2d 233; *Viculin, supra,* p 406, fn 27. Although the case did involve essentially an issue of credibility, it was not on the basis of the polygraph results that the hearing officer resolved the issue in favor of Rhoades. As noted earlier, the hearing officer listed five reasons for accepting Rhoades's version of the event. Those reasons were unrelated to the polygraph evidence. Furthermore, even if the polygraph evidence did play a part in the hearing officer's decision, it is clear from a reading of her entire opinion that the result would not have been different had that evidence been excluded.

Affirmed. No costs.