67628. HODGES et al. v. TOMBERLIN et al.

CARLEY, Judge.
Appellants Hodges and Mikell were discharged from their employment with appellee Georgia Ports Authority (Port) for falsifying company records. They allegedly left work earlier than the times they noted on their log sheets. Appellants instituted the instant tort suit

against the Port and several Port employees on the basis of the circumstances surrounding their termination. The case came on for trial, and after the close of appellant's evidence, the trial court directed a verdict in favor of appellees. Appellants appeal.

1. Appellants sought damages for defamation based upon their supervisor's oral announcement of their termination. Each appellant was summoned separately to the supervisor's office to be informed of his discharge. Appellants alleged that other Port employees were present at the confrontations and heard the supervisor accuse appellants of falsifying company records.

"In defamation cases involving an employer's disclosure to other employees of the reasons for a plaintiff's discharge, the general rule is that a qualified privilege exists where the disclosure is limited to those employees who have a need to know by virtue of the nature of their duties (such as supervisors, management officials, union representatives, etc.) and those employees who are otherwise directly affected either by the discharged employee's termination or the investigation of the offense leading to his termination. [Cit.]" *Jones v. J. C. Penney Co.*, 164 Ga. App. 432, 434 (297 SE2d 339) (1982). In the instant case, it is undisputed that certain higher-level Port employees were present in the supervisor's office and witnessed appellants' discharge. These employees had the requisite "need to know," and any publication as to them was privileged. Appellants contend, however, that co-workers who were not covered by the privilege were in the vicinity of the office in the course of performing their duties, and that these co-workers overheard the loud verbal exchange which occurred.

Even if such co-workers were in the vicinity at the time, there was a failure of proof with regard to appellants' defamation claim. The statement at issue here did not, as a matter of law, impute to appellants a crime punishable by law. Since special damages were not shown, whether or not the spoken words were actionable depended upon their innuendo and the meaning which was understood by the unauthorized persons who allegedly heard them. *Southland Corp. v. Garren*, 135 Ga. App. 77 (217 SE2d 347) (1975), rev'd on other grounds 235 Ga. 784 (221 SE2d 571) (1976). " 'It is not enough that the language used is reasonably capable of a defamatory interpretation if the recipient did not in fact so understand it.' [Cit.] . . . 'The plaintiff has the burden of proof on the question of the publication of the dafamatory matter. To satisfy this burden, it is necessary that he show not only that the defendant spoke or wrote or otherwise prepared the defamatory matter or made it available to a third person, but also that the third person understood its significance.' [Cit.]" *Sigmon v. Womack*, 158 Ga. App. 47, 50 (279 SE2d 254) (1981). In the case at bar, none of the "unauthorized" co-workers who allegedly overheard the remarks testified at trial. The only evidence of any un-

privileged publication was the testimony of appellants themselves. Both appellants testified that co-workers were present during the event, but neither testified with absolute certainty that the allegedly defamatory statements were actually heard by them. Moreover, there was no evidence whatsoever that the remarks, even if overheard, were understood in a defamatory sense. In fact, appellant Hodges testified that he himself had not known what "falsification of time" meant, and that the supervisor had to explain it to him.

Since the evidence presented did not sustain appellants' defamation allegation, the trial court did not err in directing a verdict for appellees as to this claim.

2. Appellants also sought damages for defamation arising from a telephone call made by the Port's personnel manager to Patricia Bowers, a former Port employee who was a witness for appellants. The circumstances surrounding that telephone call were as follows: Appellants needed evidence that there had been an unprivileged publication of the alleged defamation discussed in Division 1. They experienced difficulty in locating anyone who was willing to testify on their behalf. Eventually, appellant Hodges found one Redding, who was a former Port employee and who had previously offered to assist appellants. Appellant Hodges asked Redding to submit an affidavit for use in appellants' case. Redding asked what was in it for him, and requested half of the proceeds of the suit. Hodges counter-offered a third of the proceeds, which Redding accepted. Hodges then told Redding, "Not in this life." After further discussion, Redding declined to assist appellants. Subsequently, appellants procured the necessary affidavit from Patricia Bowers.

Two days after Patricia Bowers furnished her affidavit, she received the telephone call from the personnel manager at the Port. The conversation was recorded, and the relevant portion of the personnel manager's message was: "[I]t's been reported to us very, very recently that Hodges and Mikell have offered, or might offer to pay up to one-third of whatever award they might get to a former G.P.A. employee or employees in return for a sworn statement saying that the employee heard some member of management at G.P.A. say that Hodges and Mikell were fired for falsification of records. Now, I'm, I'm not saying whether or not they actually did make such an offer; I don't know myself. However, if anybody knowingly signed such a statement and it were to contain false information in return for Hodges' and Mikell's promises to pay money they might get from the lawsuit, that person would be guilty of an extremely serious crime called perjury, and the Port's concerned that anybody who works here or ever did work here or might come back to work here, uh, were not to get into a situation such as that. And if they did, however, the G.P.A. would have no choice but to take whatever information we

have to the judge and to the district attorney."

Appellants contend that the personnel manager's remarks imputed to them the commission of a crime punishable by law, so as to constitute actionable defamation without a showing of special damages. See OCGA § 51-5-4. However, the personnel manager did not state that appellants were seeking false testimony, and his statements did not rise to the level of charging appellants with any specific crime cognizable under Georgia law. See generally *Meyer v. Ledford*, 170 Ga. App. 245 (316 SE2d 804) (1984); Southard v. Forbes, Inc., 588 F2d 140 (1979); *Anderson v. Fussell*, 75 Ga. App. 866 (44 SE2d 694) (1947); *Christian v. Ransom*, 52 Ga. App. 218 (183 SE 89) (1935); *Hardeman v. Sinclair Refining Co.*, 41 Ga. App. 315 (152 SE 854) (1930). In the case at bar, as in *Meyer v. Ledford*, supra, the statement in question constituted, at most, "disparaging words" which were actionable only upon a showing of special damages. OCGA § 51-5-4 (b). No special damages having been established, the trial court did not err in directing a verdict in favor of appellees as to this count.

3. In addition to the defamation claim, the telephone call set forth in Division 2 was also the basis of a claim for damages on the tort theory of obstruction of justice or of outrageous conduct. This claim was dismissed by the trial court, and appellants enumerate that dismissal as error.

"While we are not familiar with the tort of 'outrage,' Georgia does recognize a cause of action for intentional infliction of emotional distress. [Cits.] However, in those cases where recovery has been authorized for intentional infliction of emotional distress, the defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten *the plaintiff*. [Cits.]" (Emphasis supplied.) *Ga. Power Co. v. Johnson*, 155 Ga. App. 862, 863 (274 SE2d 17) (1980).

In the instant case, the telephone call of which appellants complain was not made to or directed toward them. There was no showing of any injury to their peace, happiness, or feelings. Nor was there any evidence that they were humiliated, embarrassed, or frightened thereby. Thus, insofar as appellants attempted to allege a tort of "outrage," the trial court did not err in dismissing their claim.

Moreover, if treated as a tort claim for obstruction of justice, appellants' allegations failed to state a claim upon which relief could be granted. See generally *Martin v. Martin*, 118 Ga. App. 192 (163 SE2d 254) (1968). Appellees' warning to Patricia Bowers that if she knowingly made false statements under oath, she could be prosecuted for perjury, did not constitute an attempt illegally to influence a witness. See OCGA § 16-10-93. Additionally, since Ms. Bowers nonetheless participated in appellants' lawsuit, and since her testimony after receiving the telephone call was substantially the same as her affidavit submitted prior to receiving it, appellants suffered no damage as a

result of the conduct of appellees. Thus, appellants have stated no right to recovery under OCGA §§ 51-1-1, 51-1-6, or 51-1-8.

"[I]t does not appear that any legal right of the [appellants] was invaded or violated by any of the acts complained of, or by the manner in which any of these acts were performed or committed, in consequence of which the [appellants] should be permitted a recovery of damages. So far as we can see, nothing was done that was clearly wrong per se." *George Muse Clothing Co. v. Lee*, 42 Ga. App. 353, 355 (156 SE 281) (1930). See also *Fields v. Thompson*, 164 Ga. App. 331 (297 SE2d 100) (1982).

4. Contrary to appellants' assertions, the trial court did not err in refusing to admit into evidence the results of appellants' polygraph examinations. "It is the undisputed law of this state that the results of a polygraph examination are not admissible into evidence and have no probative value. [Cits.] In the absence of a stipulation of admissibility, this general rule of inadmissibility applies. [Cits.]" *Feltham v. Cofer*, 149 Ga. App. 379, 381 (254 SE2d 499) (1979). Since no such stipulation was made by the parties to the instant case, the trial court correctly excluded the evidence relating to the polygraph examinations.

5. Appellants' remaining enumeration of error is rendered moot by our ruling herein.

*Judgment affirmed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED MAY 7, 1984.

*Cletus W. Bergen II*, for appellants.
*G. Paris Sykes, Jr., R. Jonathan Hart, Robert C. Williams*, for appellees.