Kurt SABAG, Plaintiff and Appellee,

v.

CONTINENTAL SOUTH DAKOTA and
CFS Continental, Defendants
and Appellants.

No. 14526.

Supreme Court of South Dakota.

Argued Nov. 26, 1984.

Decided Sept. 4, 1985.

Edwin E. Evans of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee; Monte R. Walz of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendants and appellants.

HENDERSON, Justice.

## ACTION

This is an appeal from a jury award of $65,000 in a malicious prosecution action. The trial court entered judgment upon the jury verdict and denied appellants' motions for a new trial and judgment notwithstanding the verdict. We affirm in part, reverse in part, and remand for a new trial.

## FACTS

Kurt Sabag, plaintiff-appellee (Sabag), was employed as a salesman by Continen-

tal South Dakota, defendant-appellant. Continental South Dakota, a subsidiary of codefendant-appellant CFS Continental, is a wholesale distributor of food products. Continental South Dakota and CFS Continental will be collectively referred to as Continental.

In May 1980, after nearly one and one-half years as a salesman for Continental and its predecessor, Sabag accepted a similar sales position with a competitor and gave two weeks' notice. Thereafter, this notice was reduced to one week at the request of Sabag's new employer. In his new employment, Sabag was to perform the same type of work in nearly the same geographic territory of South Dakota.

Prior to informing Continental of his intention to leave, a Continental customer informed Sabag that her account had not been credited for several cash payments she had made to him. Before leaving Continental's employ, Sabag twice informed Continental's bookkeeper, Pat DeVaney, of the discrepancy. The money never surfaced and when Sabag sought to procure his final pay and reimbursement checks, he was told that they had not been prepared because of the discrepancy of $1,051.06 in this one account. At a meeting with a Continental supervisor, Fran Weber, Sabag told Weber that he had put the money and receipts under an adding machine on Pat DeVaney's desk as he had been doing throughout his employment. Weber testified at trial that this was not unusual; that he was aware of its practice by Sabag and others; and that he had acquiesced to it.

Two weeks after this initial meeting, Continental summoned Sabag to another meeting. At this second meeting, Sabag was confronted by Weber and two other Continental executives who questioned Sabag about the missing money. Although Sabag was never "accused," these Continental executives demanded that Sabag sign over the paychecks to them. Sabag refused, viewing the demand as a confession of guilt.

Thereafter, Sabag sought legal help to procure his paychecks and he contacted Attorney Tony Weisensee. Weisensee requested that Sabag take a psychological stress evaluation (PSE) and on July 3, 1980, Sabag took such a test. On July 29, 1980, Chris Rallis, the person who performed the test on Sabag, informed Attorney Weisensee that based on the evaluation results, it was his opinion that Sabag was not responsible for the unauthorized taking of money from Continental. By a letter dated August 29, 1980, Weisensee informed Continental that Sabag had submitted to a PSE and that the results therefrom indicated Sabag's innocence.

Prior to this, however, on August 26, 1980, Fran Weber and another Continental executive went to the Sioux Falls Police Department and reported the missing money. In response to questions propounded by a police detective, Weber and the other executive informed the detective that Sabag was the suspect and of the explanation given by Sabag, but they failed to inform the detective that the procedures depicted in Sabag's explanation, i.e., the placing of money, checks, and receipts under the adding machine on the bookkeeper's desk, were known to Continental and practiced by other Continental employees. By a letter dated September 17, 1980, Continental informed Attorney Weisensee that it had been advised by the State's Attorney that an arrest warrant had been issued for Sabag. After receipt of this letter, however, neither Weisensee nor Sabag contacted or delivered any information concerning the PSE to either the State's Attorney or the police. Continental, similarly, never forwarded the PSE information to the police or State's Attorney.

On September 25, 1980, at 6:30 a.m., Sabag was arrested at his home, in front of his wife and children. He was handcuffed by a deputy sheriff and taken to jail where he was fingerprinted, photographed, stripped of his possessions, and locked in a cell. Later that day, Sabag was released on his own recognizance.

On October 30, 1980, Sabag's preliminary hearing was held. At this hearing, Continental's bookkeeper, Pat DeVaney, testi-

fied under subpoena, as did the customer whose account was in question. The magistrate dismissed the charges against Sabag finding no probable cause and declaring the State's case "complete guesswork."

In December 1980, Sabag commenced the present malicious prosecution action and after a trial on the merits in January 1984, the jury returned a verdict in favor of Sabag for $65,000. The jury declined to award punitive damages. Continental filed motions for judgment n.o.v. and for a new trial. From the denial of these motions, Continental now appeals.

## DECISION

### I.

DID THE TRIAL COURT ERR BY ADMITTING INTO EVIDENCE TESTIMONY AND EXHIBITS CONCERNING THE RESULTS OF THE PSYCHOLOGICAL STRESS EVALUATION? WE HOLD THAT IT DID.

Over Continental's timely and appropriate objections, the trial court permitted Chris Rallis to testify that based on the results of the PSE performed on Sabag, it was his opinion that Sabag was not responsible for Continental's missing funds. Continental contends that the trial court erred in admitting this evidence, and we agree.

A PSE is a type of "voice stress analysis" which purportedly detects, measures, and graphically displays tremors or stress in a person's voice which is assumed to accompany conscious deception. *See Heisse v. Vermont*, 519 F.Supp. 36, 40 (D.Vt.1980); *United States v. Traficant*, 566 F.Supp. 1046, 1046 (N.D.Ohio 1983); and Horvath, *Detecting Deception: The Promise and the Reality of Voice Stress Analysis*, 27 J. Forensic Sci. 340 (1982). It is not the typical polygraph or "lie detector" test where the person is connected to a machine which measures changes in blood pressure, respiration, pulse rate, and galvanic skin responses which are also assumed to accompany conscious deception or lying. Although the PSE is not identical to a polygraph examination, its intent and purpose is the same, to wit, to detect if and when the subject is lying or being deceptive.

■ In South Dakota criminal cases, polygraph results are not admissible evidence. *See State v. Watson*, 248 N.W.2d 398, 399 (S.D.1976); and *State v. O'Connor*, 86 S.D. 294, 301, 194 N.W.2d 246, 250–51 (1972). This position has been recently reaffirmed in *State v. Muetze*, 368 N.W.2d 575, 588 (S.D.1985), wherein this Court stated: "Polygraph results are not admissible as evidence in South Dakota Courts." As for the admissibility of PSE evidence in criminal cases, the clear majority of courts considering this question do not permit its introduction into evidence. *See United States v. Traficant*, 566 F.Supp. at 1047; *Caldwell v. State*, 267 Ark. 1053, 1059, 594 S.W.2d 24, 28 (1980); *State v. Schouest*, 351 So.2d 462, 468–69 (La.1977); *Smith v. State*, 31 Md.App. 106, 119–20, 355 A.2d 527, 535–36 (1976); *State v. Ochalla*, 285 N.W.2d 683, 684, (Minn. 1979); *People v. Tarsia*, 67 A.D.2d 210, 212, 415 N.Y.S.2d 120, 122 (1979), *aff'd*, 50 N.Y.2d 1, 405 N.E.2d 188, 427 N.Y.S.2d 944 (1980); and *State v. Makerson*, 52 N.C.App. 149, 152, 277 S.E.2d 869, 872 (1981).

■ Turning to the question of the admissibility of such lie detection evidence in civil trials, we note that generally, polygraph results are also not admissible in civil proceedings. *See Goldthorpe v. Farmers Ins. Exchange*, 19 Ariz.App. 366, 507 P.2d 978 (1973) (polygraph test inadmissible without stipulation); *Robinson v. Wilson*, 44 Cal.App.3d 92, 118 Cal.Rptr. 569 (1974) (polygraph test not admissible without stipulation); *Whitten v. Whitten*, 407 So.2d 367 (Fla.App.1981) (polygraph evidence not admissible without stipulation); *Hodges v. Tomberlin*, 170 Ga.App. 842, 319 S.E.2d 11 (1984) (polygraph results not admissible absent stipulation); *Perry v. Commonwealth ex rel. Kessinger*, 652 S.W.2d 655 (Ky.1983) (results of lie detector test not admissible in evidence); *Michigan State Employees Ass'n v. Michigan Civil Serv. Comm'n*, 126 Mich.App. 797, 338

N.W.2d 220 (1983) (polygraph results not admissible in civil or criminal trials); *State v. Sullivan,* 360 N.W.2d 418 (Minn.App. 1985) (polygraph test results inadmissible in both criminal and civil actions); *Gropp v. Lotton,* 160 Mont. 415, 503 P.2d 661 (1972) (polygraph evidence properly excluded in civil action); *State v. Brown,* 297 Or. 404, 687 P.2d 751 (1984) (upon proper objection, polygraph evidence not admissible in any civil or criminal trial); *Memphis Bank & Trust Co. v. Tennessee Farmers Mutual Ins. Co.,* 619 S.W.2d 395 (Tenn.App.1981) (results of lie detector test not admissible in civil cases); and *Pierson v. McClanahan,* 531 S.W.2d 672 (Tex.Civ.App.1975) (polygraph results not admissible in civil suits).

■ The rationale advanced for not admitting evidence of polygraph results, in civil or criminal cases, is that such evidence is irrelevant because of dubious scientific value, *deVries v. St. Paul Fire & Marine Ins. Co.,* 716 F.2d 939 (1st Cir.1983); it has no "general scientific acceptance as a reliable and accurate means of ascertaining truth or deception," *State v. Green,* 271 Or. 153, 165–66, 531 P.2d 245, 251, 92 A.L.R.3d 1301, 1309 (1975); it is not reliable, *M.N.D. v. B.M.D.,* 356 N.W.2d 813 (Minn.App.1984); it has no probative value, *Feltham v. Cofer,* 149 Ga.App. 379, 254 S.E.2d 499 (1979); and it is likely to be given significant, if not conclusive weight by the jury, so that "the jurors' traditional responsibility to collectively ascertain the facts and adjudge guilt or innocence is [thereby] preempted." *United States v. Alexander,* 526 F.2d 161, 168 (8th Cir.1975).

■ Turning now to the admissibility of PSE results in civil actions, we hold, that for the same reasons polygraph and PSE results are not admissible in criminal cases and polygraph results are not admissible in civil cases, PSE results are not admissible in evidence in civil cases in this state. First, the PSE has no general scientific acceptance as to reliability. *See Barrel of Fun, Inc. v. State Farm Fire & Cas. Co.,* 739 F.2d 1028, 1032 (5th Cir.1984); *United States v. Traficant,* 566 F.Supp. at 1047;

*People v. Tarsia,* 415 N.Y.S. at 122; *State v. Makerson,* 277 S.E.2d at 872; and Horvath, 27 J. Forensic Sci. at 349. Second, the PSE, like polygraph results,

> "[I]s likely to be shrouded with an aura of near infallibility, akin to the ancient oracle of Delphi." *United States v. Alexander,* 526 F.2d at 168. *Accord, United States v. Wilson,* 361 F.Supp. at 513; *People v. Leone,* 25 N.Y.2d 511, 518, 307 N.Y.S.2d 430, 435, 255 N.E.2d 696, 700 (1969). Both tests invite the trier of fact to substitute the test results for its own credibility determinations, *Traficant,* 566 F.Supp. at 1047, thus inducing the fact finder to surrender "the responsibility for determining the truth of the evidence." *United States v. Price,* 722 F.2d 88, 90 (5th Cir.1983).

*Barrel of Fun,* 739 F.2d at 1032 (footnote omitted).

■ Sabag contends, however, that the PSE results were admissible because they were not used to prove his guilt or innocence, but instead were used to show Continental's malice. Sabag asserts that malice is shown because Continental, after receiving the PSE results which supported Sabag's claim of innocence, failed to relay this exculpatory information to the police. This contention assumes, however, that the person or corporation which initiates a prosecution, has a duty, in a malicious prosecution context, to relay information to the authorities *which is also in the possession of the subject* of the prosecution, and information which the courts consider unreliable. We refuse to impose such an affirmative duty under the facts of this case. The trial court erred by admitting the testimony and evidence concerning the PSE results. Continental is therefore entitled to a new trial.

## II.

WAS EVIDENCE PROPERLY ADMITTED THAT CONTINENTAL DID NOT REPORT TO THE POLICE A SUBSEQUENT INCIDENT OF SUSPECTED

EMPLOYEE THEFT? WE HOLD THAT IT WAS.

During trial, Sabag elicited testimony from Continental managers that when confronted with another incident of suspected employee theft, Continental did not report it to the police. Continental contends the admission of this testimony was erroneous because it was irrelevant. Continental argues the conditions surrounding the two events were not substantially similar.

Prior to the testimony here in question, however, Continental elicited testimony that it reported the theft in which Sabag was a suspect, because it was Continental's civic duty to report the crime. The trial court, in chambers, admitted the testimony in issue so as to allow Sabag "to get to this civic duty thing." We interpret this to be a ruling that the testimony concerning Continental's failure to report the second employee theft was relevant to rebut Continental's assertion that it was its civic duty to report the theft in which Sabag was a suspect.

▪ Questions concerning relevance and materiality rest largely in the trial court's discretion and do not constitute grounds for a new trial or reversal unless abuse is clearly demonstrated. *See State v. McNamara*, 325 N.W.2d 288, 291 (S.D.1982); *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696, 699 (S.D.1982); *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 507 (S.D.1977). Upon a review of the record, we cannot find this to be a clear demonstration of abuse.

### III.

DID THE TRIAL COURT PROPERLY ADMIT TESTIMONY OF MRS. SABAG, MADE BY AN EMPLOYEE OF CONTINENTAL, CONCERNING ACCESS OF OTHERS TO THE MISSING MONEY? WE HOLD THAT IT DID.

▪ At trial, Mrs. Sabag was permitted to testify that Pat DeVaney told her prior to the preliminary hearing that anybody could have taken the money. DeVaney was then acting as Continental's bookkeep-

er. The trial court ruled this testimony to be within an exception to the rule against hearsay and Continental now asserts this ruling to be in error. We disagree.

▪ SDCL 19–16–3(4) provides: "A statement is not hearsay if it is offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]" The admission of evidence is within the sound discretion of the trial court and will not be disturbed on appeal unless there has been a clear abuse of discretion. Here, the trial court found DeVaney's statement to concern a matter within the scope of her employment. Pat DeVaney was Continental's bookkeeper and in charge of accounts receivable. It was her desk on which the missing money was laid and DeVaney was well acquainted with the salesmen's practice of leaving checks, receipts, and cash on her desk. The trial court's evidentiary ruling was not an abuse of discretion.

### IV.

WERE THE JURY INSTRUCTIONS ERRONEOUS? WE HOLD THEY WERE NOT.

Continental here contends that for various reasons, the instructions given by the trial court and its refusal of Continental's proffered instructions were erroneous. Upon a review of the instructions as a whole, however, we find the instructions to have been a full and correct statement of the applicable law. *Frazier v. Norton*, 334 N.W.2d 865, 870 (S.D.1983).

▪ Continental contends that after the jury received its written instructions, the trial court erred when it refused to provide a more intelligible definition of "malice" and "malicious." During deliberations, the jury sent the trial judge a note with concerns that the definitions of malice and malicious, contained in three separate instructions, were contradictory. The jury requested a more understandable definition of those terms. After conferring with

counsel, the trial court, by return note, informed the jury that one of the instructions related to exemplary damages only and another defined malice and malicious for all other purposes. Continental now asserts that the trial court's refusal to provide a clearer definition was erroneous. In *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D.1979), we held it was not erroneous to refuse to amplify proper instructions. The propriety of amplifying proper instructions, upon a request for clarification, depends upon each given instruction. Here, the instructions stated the applicable law and it was not error for the trial court to refuse to amplify the instructions.

Concerning Jury Instruction 20, under this set of facts, the trial court adequately instructed on the law. This Court and many other jurisdictions have held that defendants cannot insulate themselves from a malicious prosecution in reporting crimes to the authorities unless they have given "full and correct" information to those authorities. *See Brumbaugh v. Frontier Refining Co.*, 173 Neb. 375, 113 N.W.2d 497 (1962); *Schmidt v. Leben*, 184 N.W.2d 611 (N.D.1971); *Bucher v. Staley*, 297 N.W.2d 802 (S.D.1980); *Olson v. Wastlund*, 62 S.D. 627, 256 N.W. 118 (1934); and *Gladfelter v. Doemel*, 2 Wis.2d 635, 87 N.W.2d 490 (1958).

## V.

### DID THE TRIAL COURT ERR BY FAILING TO GRANT A DIRECTED VERDICT FOR CONTINENTAL? WE HOLD THAT IT DID NOT.

A motion for a directed verdict under SDCL 15–6–50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. *Nelson v. Schroeder Aerosports, Inc.*, 280 N.W.2d 107, 108 (S.D.1979). Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. *Smith v. Halverson*, 273 N.W.2d 146, 149 (S.D.1978). The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences

therefrom in his favor. *Weber v. Bernard*, 349 N.W.2d 51, 53 (S.D.1984). If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. *Cox v. Brookings Int'l Life Ins. Co.*, 331 N.W.2d 299, 300 (S.D.1983). The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse. *Lytle v. Morgan*, 270 N.W.2d 359, 360 (S.D. 1978).

A motion for judgment n.o.v. is based on and relates back to a directed verdict motion made at the close of all the evidence. *Swiden Appliance v. Nat'l Bank of South Dakota*, 357 N.W.2d 271, 277 (S.D.1984); SDCL 15–6–50(b). Thus, the grounds asserted in support of the directed verdict motion are brought before the trial court for a second review. *Parham v. Dell Rapids Township*, 80 S.D. 281, 284, 122 N.W.2d 548, 550–51 (1963). We review the testimony and evidence in a light most favorable to the verdict or the nonmoving party, *Ziebarth v. Schnieders*, 342 N.W.2d 234, 236 (S.D.1984), "then without weighing the evidence [we] must decide if there is evidence which would have supported or did support a verdict...." *Corey v. Kocer*, 86 S.D. 221, 226–27, 193 N.W.2d 589, 593 (1972).

Continental's main contention, in light of our previous holdings, is that the trial court erred in failing to direct a verdict because there was no evidence of any malice on the part of Continental toward Sabag. We disagree.

At trial, evidence was presented that Continental went to the police to report the missing money and pointed at Sabag as the suspect. Although Continental at this time divulged Sabag's explanation, it failed to inform the police that the procedure outlined in Sabag's excuse was practiced by other sales personnel or that Continental was aware of its occurrence and had in fact acquiesced to it. Viewing Continental's selective or partial disclosure of information to the police most favorably to Sabag, and indulging all legitimate inferences there-

from, reasonable minds could differ as to the existence of malice when Continental reported the lost funds. In a sense, it could be inferred that Continental "did not come clean" with all the facts. Therefore, a directed verdict was not appropriate in this case.

Continental has presented several other arguments which we deem resolved by our ruling on Issue I. The trial court's rulings are therefore affirmed in all respects, except for the decision to admit evidence concerning the psychological stress evaluation. Such admission being a prejudicial error of law, Continental is entitled to a new trial.

Affirmed in part, reversed in part, and remanded.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, concurs in part and dissents in part.

WUEST, Acting Justice (concurring in part and dissenting in part).

I agree with the majority on Issues I and III. In my opinion, however, the trial court erred in admitting evidence of failure to report a subsequent incident of suspected employee theft, which occurred after the incident in litigation. Further, it is my opinion the trial court improperly instructed the jury and should have granted judgment n.o.v.

At trial, plaintiff introduced evidence that Pat DeVaney had worked for the appellant and was suspected of theft two years after the incident involving the plaintiff. This was never reported to the authorities. Relevance rests largely in the trial court's discretion and does not constitute grounds for a new trial or reversal unless abuse is clearly demonstrated. (See majority opinion.) However, I believe this unreported suspected theft which occurred two years after the incident in litigation was not relevant to any issue in the case at bar, and its admission was an abuse of discretion.

The appellant offered at trial the following jury instruction:

If the defendants have done no more than giving what they believed to be full and correct information to the police, and the police without further interference on their part, except giving such honest assistance as the police may require, continue the prosecution, defendants are not liable to plaintiff as a result of said prosecution. (Defendant's Requested Jury Instructions, Instruction No. 10.)

This instruction was refused and the court gave Instruction No. 20, which provided:

If the defendants have done no more than giving what they believed to be full and correct information to the police, and the police without further interference on their part, except giving such honest assistance as the police might require, continue the prosecution, such evidence *can be considered* by you in deciding whether or not the defendants acted with malice. (Emphasis supplied.)

Appellant urges error:

In my opinion, neither instruction was correct under the evidence of this case. The evidence shows the authorities made the decision to bring charges against appellee, not Continental, as will be hereafter addressed regarding the motion for judgment n.o.v. Both instructions address continuation of the prosecution by Continental, which is contrary to the evidence.

Finally, I believe the court should have granted judgment n.o.v. Continental personnel reported the cash discrepancy to the police on August 26, 1980. After the initial report of August 26, 1980, no one on behalf of Continental contacted either the police department or the state's attorney's office to urge or encourage further investigation or prosecution of Sabag. The investigating officer, Sergeant LeRoy Downs, testified that no one from Continental tried to direct his investigation. He stated that Continental simply made a factual report, "leaving it to the Sioux Falls Police Department to conduct such further investigation as it professionally deemed necessary." He further testified that the Continental person-

nel told him Sabag claimed to have left the cash on Pat DeVaney's desk. Officer Downs also stated he made an independent determination to turn the matter over to the state's attorney's office for prosecution. In my opinion, Continental did the same as any other victim of a crime should do. *See* SDCL 22–11–12. They reported a felony to law enforcement officials for investigation. Law enforcement made the decision to prosecute.

The elements necessary to sustain an action for malicious prosecution are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice; and (6) damages conforming to legal standards resulting to plaintiff. *Weber v. Western Bank*, 336 N.W.2d 652 (S.D.1983); *Kunz v. Johnson*, 74 S.D. 577, 57 N.W.2d 116 (1953). We said in *Weber:*

> "If an informer merely states to a peace officer his knowledge of a supposed offense and the officer makes the arrest entirely upon his own judgment and discretion, the informer is not liable."

336 N.W.2d at 653, *quoting Johnson v. First National Bank & Trust Co.*, 207 Neb. 521, 300 N.W.2d 10 (1980) and *Jensen v. Barnett*, 178 Neb. 429, 134 N.W.2d 53 (1965).

The evidence in this case does not establish the presence of malice nor the commencement of the criminal proceeding by Continental against Sabag. The facts in this case are analogous to those in *Weber* and the trial court should have granted judgment n.o.v.