*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD SULLIVAN, JR.,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN,

        Defendant-Appellee.

FOR PUBLICATION
May 7, 2019
9:10 a.m.

No. 343018
Court of Claims
LC No. 17-000265-MZ

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

CAMERON, J.

Plaintiff, Donald Sullivan, Jr. (Sullivan), filed this lawsuit for compensation based on the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.*, after his murder conviction was vacated and the charges were dismissed. Sullivan appeals the order of the Court of Claims granting summary disposition in favor of defendant, the State of Michigan, and dismissing Sullivan's case. On appeal, Sullivan challenges the Court of Claims's determination that he was not entitled to compensation under the WICA because he failed to show "new evidence" that satisfied the requirements of MCL 691.1755(1)(c). Finding no error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 1975, Sullivan was sentenced to life in prison after a jury convicted him of first-degree felony murder for his role in the robbery of a jewelry store and the murder of its owner. A codefendant, Lawrence Patton, entered into a plea agreement with the prosecution and provided trial testimony that was the primary evidence used to support Sullivan's conviction.

Several years later, Patton recanted his trial testimony. He executed two affidavits in 1981, admitting in both that he lied about Sullivan's involvement in the robbery and murder of the jewelry store owner. In December 1981, Sullivan filed a motion for new trial based on Patton's recantation. In support of his motion, Sullivan provided Patton's two affidavits, and the trial court granted an evidentiary hearing. Patton testified at the evidentiary hearing, authenticated his affidavits, and reiterated that his trial testimony offered against Sullivan was false. The prosecution questioned Patton's veracity and argued successfully to the trial court that Patton take a polygraph examination administered by Michigan State Police regarding the

truthfulness of his recantation. During the polygraph examination, Patton reaffirmed that Sullivan was not involved in the crimes. In the opinion of the examiner, the test results indicated that Patton was not deceptive in his exoneration of Sullivan.[1] Thereafter, the trial court granted Sullivan's motion for a new trial.

The prosecution, apparently unpersuaded of Sullivan's innocence, took steps to prosecute Sullivan again for the robbery and murder. However, after the trial court denied the prosecution's motion to use Patton's prior trial testimony as evidence against Sullivan for his retrial, the prosecution conceded that "without the use of [Patton's] previous testimony from the previous trial, we cannot proceed at this time in this case." Accordingly, the trial court dismissed the charges against Sullivan, and he was released from custody.

In September 2017, Sullivan filed a WICA complaint seeking compensation for the approximate seven years that he was imprisoned. The Court of Claims granted the State of Michigan's motion for summary disposition and, in turn, denied Sullivan's cross-motion for summary disposition. In doing so, the Court of Claims concluded that Sullivan failed to prove by clear and convincing evidence "new evidence" that demonstrated that he did not perpetrate the crime, which resulted in the reversal or vacation of the charges in the judgment of conviction, and ultimately resulted in the dismissal of the charges. MCL 691.1755(1)(c).

## II. ANALYSIS

On appeal, Sullivan argues the court erred when it granted the State of Michigan's motion for summary disposition and denied Sullivan's cross-motion for summary disposition. We disagree.

We initially note that the State of Michigan filed its motion for summary disposition under MCR 2.116(C)(7), and Sullivan filed his cross-motion for summary disposition under MCR 2.116(C)(7) or (C)(8). The Court of Claims, however, specified in its order that summary disposition was granted under MCR 2.118(C)(8) and (C)(10). Importantly, a tort action against a governmental entity generally raises two issues: (1) whether the plaintiff has pled in avoidance of governmental immunity, and (2) whether the plaintiff can establish the elements of his or her claim. *Glancy v City of Roseville*, 457 Mich 580, 588; 577 NW2d 897 (1998). We do not construe the State of Michigan's motion as one brought under MCR 2.116(C)(7) because Sullivan's claim concerns whether he can establish the elements under the WICA. "A trial court is not necessarily constrained by the subrule under which a party moves for summary disposition." *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 312; 696 NW2d 49 (2005). Furthermore, because the court ruled on the motion for summary disposition before the commencement of discovery, we analyze the motions for summary dispositions under MCR 2.116(C)(8).

---

[1] The polygraph examiner concluded his report, stating: "It is the opinion of the undersigned examiner, based on the analysis of [Patton's] polygraph examination that in the area of [plaintiff's] being actively involved in the robbery/homicide, there is no deception."

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Old Kent Bank v Kal Kustom, Inc*, 255 Mich App 524, 528; 660 NW2d 384 (2003). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Id*. at 304-305.

We also review de novo issues of statutory interpretation. *In re Mich Cable Telecom Ass'n Complaint v Mich Pub Serv Comm*, 239 Mich App 686, 690; 609 NW2d 854 (2000). When interpreting a statute, our goal "is to ascertain and give effect to the intent of the Legislature." *Portelli v IR Constr Prod Co, Inc*, 218 Mich App 591, 606; 554 NW2d 591 (1996). Undefined terms in a statute "must be given their plain and ordinary meanings, and it is proper to consult a dictionary for definitions." *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). This Court must avoid interpreting a statute in a way that would make any part of it meaningless or nugatory. *Sweatt v Dep't of Corrections*, 468 Mich 172, 183; 661 NW2d 201 (2003).

To prevail on a claim under the WICA, a plaintiff must prove by clear and convincing evidence all of the following:

> (a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

> (b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.

> (c) *New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.* [MCL 691.1755(1)(a) to (c) (emphasis added).]

WICA defines "new evidence" as "any evidence that was not presented in the proceedings leading to plaintiff's conviction, including new testimony, expert interpretation, the results of DNA testing, or other test results relating to evidence that was presented in the proceedings leading to plaintiff's conviction." MCL 691.1752(b). However, when the proposed new evidence depends upon the reliability of a recantation, the WICA provides an additional requirement:

> New evidence does not include a recantation by a witness unless there is *other evidence* to support the recantation or unless the prosecuting attorney for the

county in which the plaintiff was convicted or, if the department of attorney general prosecuted the case, the attorney general agrees that the recantation constitutes new evidence without other evidence to support the recantation. [MCL 691.1752(b) (emphasis added).]

## A. PATTON'S RECANTATION EVIDENCE

Sullivan first argues that Patton's recantation constituted "new evidence" sufficient to meet the standards enumerated in MCL 691.1755(1)(c). We disagree.

Sullivan claims that he is entitled to compensation under WICA because Patton's recantation constitutes "new evidence." MCL 691.1752 precludes the use of a recantation as new evidence unless it is supported by "other evidence." In this case, Sullivan claims that Patton's affidavits, his testimony at the evidentiary hearing, and his answers to questions in the polygraph report are separate and distinct pieces of "other evidence" which support Patton's recantation. Essentially, Sullivan argues that repeating the same recantation in different forms meets the definition of "other evidence" because each is separate and distinct from the others. This argument is without merit.

The WICA does not define "other evidence." Merriam-Webster's Collegiate Dictionary defines "other" as "not the same" or "different." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, Patton's recantation must be supported by evidence that is "not the same" as his recantation or is "different" from his recantation. With respect to Patton's affidavits, his testimony, and his oral statements made during the polygraph examination, the substance of each piece of proposed evidence is essentially the same—Sullivan simply provided the same recantation in three different forms. This proposed evidence does not meet the plain meaning of "other evidence" under the statute because none of the evidence was materially "different" from Patton's actual recantation. Thus, we conclude that the evidence Sullivan provided in different forms was not "other evidence" under MCL 691.1752(b).

Moreover, the Legislature requires that the "other evidence" must "support the recantation." MCL 691.1752(b). The dictionary definition of "support" means "to provide with substantiation," "corroborate," "assist," or "help." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, the recantation must be substantiated or corroborated by evidence that is different from the recantation. To allow Sullivan to use the affidavits and similar evidence to support Patton's recantation renders the statute's requirement—that there is "other evidence to support the recantation"—meaningless; a recantation cannot support itself. Otherwise, there would be no need for the Legislature to use the verb "support" in the statute. We do not interpret "other evidence" as Sullivan suggests because it would render the text of the WICA statute meaningless or nugatory. See *Sweatt*, 468 Mich at 183. We conclude that the affadivits, new trial hearing testimony, and assertions made at the polygraph test were merely different iterations of the same recantation and did not support the "new evidence" as required under MCL 691.1752(b).

## B. PATTON'S POLYGRAPH RESULTS

Sullivan also argues that the Court of Claims erred in concluding that the polygraph *results* alone were not (1) "new evidence" sufficient to satisfy the statute by itself, or (2) "other evidence" that supported Patton's recantation as "new evidence." We disagree.

Results of a polygraph examination are not admissible at trial in criminal or civil cases. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003); see also *Stone v Earp*, 331 Mich 606, 610-611; 50 NW2d 172 (1951); *Mich State Employees Ass'n v Mich Civil Service Comm*, 126 Mich App 797, 805; 338 NW2d 220 (1983). This is because "there is simply no consensus that polygraph evidence is reliable." *United States v Scheffer*, 523 US 303, 309; 118 S Ct 1261; 140 L Ed 2d 413 (1998) (plurality opinion). However, the Michigan Supreme Court has carved out one narrow exception for when the results of a polygraph examination may be considered: "[P]olygraph results may be considered, within the discretion of the judge, to enable a decision to be reached at a post-conviction hearing for a new trial." *People v Barbara*, 400 Mich 352, 415; 255 NW2d 171 (1977). Our Supreme Court created this narrow exception for the admission of polygraph results at post-conviction hearings, but has consistently declined to allow the results of a polygraph examination to be used as admissible evidence in a party's case-in-chief. See *id*. at 416; see also *Stone*, 331 Mich at 610-611.

Sullivan argues that because a civil proceeding under the WICA is more like a post-conviction hearing on a motion for a new trial than an actual civil trial, the polygraph results should be admissible evidence in his civil lawsuit under the narrow exception established in *Barbara*. However, the rationale for the exception does not support its expansion in this case. The *Barbara* Court explained that polygraph results could be considered at a post-conviction motion for new trial but not as evidence at a criminal trial because:

> The answer is that the procedure at trial and at a post-conviction hearing for new trial is different and significantly so. The procedures are significantly different because their purposes are significantly different. The purpose of a trial is to determine the guilt or innocence of the defendant. The purpose of a post-conviction hearing for a new trial is, as its name suggests, an action to determine whether there should be such a trial. It is a preliminary, not a final procedure. [*Barbara*, 400 Mich at 411.]

Although the Court in *Barbara* considered the admissibility of polygraph results in a criminal case, the same logic applies to Sullivan's WICA claim. As in *Barbara*, Sullivan's underlying criminal case involved a motion for a new trial. Indeed, the trial court considered the polygraph evidence in deciding to grant Sullivan's motion for a new trial. Here, as in *Barbara*, if a case proceeds further (a new criminal trial in *Barbara* or a civil trial involving Sullivan's WICA claim), the polygraph results would not be admissible to prove Sullivan's case-in-chief because, as explained in *Barbara*, post-conviction motions are categorically different from a trial on the merits, whether proving guilt versus innocence in a criminal trial or liability versus nonliability in a civil trial. Thus, we decline Sullivan's invitation to treat his WICA claim like a motion for a new trial. Sullivan's claim is a civil action and must be proved during his case-in-chief, and polygraph results are not admissible during the case-in-chief. Accordingly, we hold

that the Court of Claims did not err in granting the State of Michigan's motion for summary disposition and dismissing Sullivan's WICA claim because the polygraph results are not admissible to satisfy the definition of "new evidence" under MCL 691.1755(1)(c), nor are they admissible to satisfy the "other evidence" standard under MCL 691.1752(b).

Furthermore, even if the polygraph results were admissible and constituted "new evidence" under MCL 691.1755, Sullivan still cannot prevail. There are four requirements under MCL 691.1755(1)(c) that Sullivan must satisfy before he is entitled to compensation under the WICA: (1) the proferred evidence must meet the definition of "new evidence" as defined under MCL 691.1752(b); (2) the new evidence must demonstrate that Sullivan did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis for the conviction; (3) the new evidence must *result* in the reversal or vacation of the charges in the judgment of conviction; and (4) the new evidence must *result* in dismissal of all the charges or a finding of not guilty on the all of the charges on retrial.

Sullivan must, therefore, show that the results of the polygraph examination resulted in both the reversal or vacation of the charges, as well as the dismissal of those charges. We agree that the results of the polygraph examination resulted in the reversal or vacation of Sullivan's robbery and murder convictions. Based on the polygraph results, the trial court concluded that the recantation testimony was reliable and therefore vacated the convictions and granted a new trial. However, the case was not dismissed as a result of the polygraph results. After the trial court granted the motion for a new trial, the prosecution expressed its intent to pursue a new trial by filing a motion to use Patton's prior testimony from Sullivan's trial. The trial court, however, denied the prosecution's attempt to use Patton's testimony as evidence against Sullivan. Thereafter, the prosecution explained that it could not proceed to trial without that testimony, and *for that reason*, the trial court dismissed the charges. Thus, the dismissal of the charges was a result of the prosecution's inability to use Patton's prior trial testimony—not that Patton "passed" a polygraph examination.

Affirmed.

/s/ Thomas C. Cameron
/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh